**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESSE LUCAS BELTRAN,

Defendant-Appellant.

No.    22-50179

D.C. No. 2:20-cr-00447-MWF-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted on January 12, 2024
Pasadena, California

Before: TALLMAN and BENNETT, Circuit Judges, and LASNIK,[**] District Judge.

Jesse Beltran appeals the district court's denial of his motion to suppress a gun seized in an investigatory stop and frisk. On July 11, 2020, a person called 911 to report an ongoing domestic violence incident. The caller described the suspect as

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

"male White, bald, approximately twenty four years, dark shirt and shorts," "carrying a black bag," seen "assaulting a female Hispanic wearing a dress" who "is possibly injured." The caller reported his contemporaneous observations to the dispatcher: "Right now he's hitting her there in between a car, he has her cornered," "the guys [sic] is choking her," "he's threatening her, the girl is going with him now," "he hit her again, again, he's hitting her again," "hurry because he's still hitting her, she's completely bloodied." The caller reported that another eyewitness saw the suspect "going to the Food 4 Less while he was hitting the girl."

The officers entered the Food 4 Less and identified a couple, Beltran and his girlfriend, who matched the suspect and victim's descriptions. The officers briefly questioned whether the couple had been arguing before restraining Beltran to pat him down. One of the officers initially assured Beltran several times that he would let him go if he was innocent and that he was not under arrest. The officer then handcuffed Beltran and asked him about his probation and parole status. Beltran responded he was on probation and admitted to having a gun in his waistband and ammunition in his backpack. The officer then seized the weapon during the frisk.

A grand jury charged Beltran in a single-count indictment of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C § 922(g)(1). Beltran moved to suppress the evidence of the gun and ammunition

retrieved during the search. The trial court held an evidentiary hearing where one of the officers, a 25-year veteran, testified that domestic violence calls "always [have] potential for escalation," so officers handle those calls differently "to ensure that there's going to be no violence between the parties involved and directed towards officers." That officer also testified in an affidavit that it is standard practice "to ask suspects whether they are on probation or parole . . . to ensure [his] safety and the safety of others" and "to determine whether a suspect is dangerous or wanted by law enforcement."

The district court denied the defendant's motion. Beltran pleaded guilty to one count of possession of a firearm and ammunition as a felon in violation of 18 U.S.C § 922(g)(2). His conditional plea reserved the right to seek review of the district court's decision on the motion to suppress. He timely filed this appeal. We have jurisdiction under 28 U.S.C § 1291, and we affirm.

First, Beltran argues that the officers lacked reasonable suspicion to stop him. We disagree. An officer may conduct a brief stop if, considering the totality of the circumstances, he reasonably believes that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Here, several facts gave rise to reasonable suspicion: Beltran and his girlfriend matched the physical description given by a reliable 911 caller, they were located in the same area reported by the caller shortly after the call was made, and they were the only couple that fit the caller's description. To the

3

extent Beltran argues that the couple did not exactly match the informant's description, we decline to engage in a "divide-and-conquer analysis," because such an approach "seriously undercut[s] the 'totality of the circumstances' principle which governs the existence . . . of 'reasonable suspicion.'" *United States v. Arvizu*, 534 U.S. 266, 274–75 (2002) (quotations omitted).

Second, Beltran argues the officers improperly exceeded the scope of the investigation by questioning him about his parole and probation status. We disagree. Safety-related questions are justified so long as they do not unreasonably prolong the duration of the stop. *See e.g.*, *United States v. Christian*, 356 F.3d 1103, 1107 (9th Cir. 2004). Here, the officer testified that he asked about Beltran's parole and probation status to ensure his safety and the safety of others in the store, and the questioning lasted less than ten seconds. *United States v. Glass*, 833 F. App'x 149, 151 (9th Cir. 2021) (holding that questions about defendant's parole/probation status did not "measurably extend[] the duration of the stop" and did not "run afoul of the Fourth Amendment"). Because the questioning did not unreasonably prolong the stop, the officers did not exceed the permissible scope of the investigation.

Third, Beltran argues that the frisk was not supported by reasonable suspicion. We disagree. The officer frisked Beltran after he admitted that he had a gun in his waistband. The admission undoubtedly gave rise to reasonable suspicion that Beltran was armed.

4

Last, Beltran argues that the officers' conduct converted the *Terry* stop into a de facto arrest. We disagree. To determine whether and when a stop crossed the threshold from a *Terry* stop into an arrest, we inquire into the totality of the circumstances to determine whether a reasonable innocent person would have felt free to leave after brief questioning, and whether the officers' use of intrusive tactics was justified. *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014); *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). Both factors weigh against finding that an arrest occurred. The officers repeatedly assured Beltran they would "let him go" if he was innocent and that he was not under arrest. Although the officers handcuffed Beltran, the tactic was justified given the nature of the crime—an ongoing incident of domestic violence where the assailant was choking, threatening, and hitting the victim. These facts, taken together, would have led an innocent person to believe they were free to leave after questioning. And, the facts and nature of the crime justified the use of temporary precautionary measures like handcuffing the defendant. Therefore, the seizure was not a de facto arrest.[1]

**AFFIRMED.**

---

[1] Beltran argues the search was unjustified based on the information gathered as to his probation or parole status. Because we hold that Beltran's confession about the gun justified the frisk, we do not reach this question. Whether the officers developed a "freestanding and independently sufficient basis" five seconds earlier is irrelevant.